# CASES IN CHANCERY.

## Van Buren vs. Olmstead and others.

A deed, although absolute in its terms, may be proved by parol to have been intended by the parties thereto to operate only as a mortgage; and a judgment creditor of the mortgagor will be permitted to redeem the premises in the hands of the heirs or personal representatives of the mortgagee, upon the payment of the amount justly due.

Where the mortgagee takes possession of the mortgaged premises before foreclosure, and occupies them himself, he must account for the rents and profits, at the rate of rent which the premises by ordinary care would have produced exclusive of taxes and repairs.

Where the party entitled to redeem offers to pay to the defendant the whole amount equitably due, before he files his bill to redeem, he will not be charged with the defendant's costs.

1834.
October 21.

Previous to April, 1823, John Fross was the owner of a farm in the county of Columbia, on which J. Vanderpoel held a mortgage; upon which mortgage a decree for a foreclosure and sale had been entered; and a judgment had also been recovered on the bond given as a collateral security for the payment of the debt. On the 22d of April, 1823, Fross, being then indebted to the complainant in this suit, gave to J. C. Olmstead a deed of the farm; which deed was absolute upon its face, and purported to be for the consideration of $1500. The deed was not recorded until March, 1827; and Fross remained in possession of the farm until some time after the death of Olmstead, who died in August, 1824. Three days after the date of this deed, Olmstead paid to Vanderpoel $587,74, the amount due on his bond and mortgage for principal, interest and costs, and took from him an assignment of his judgment and decree against Fross. After the death of Olmstead, the complainant instituted a suit against Fross to recover the amount of his debt; and ob-

tained judgment therefor in January, 1826. Under a sale by the sheriff, upon an execution issued on this judgment, the complainant became the purchaser of all Fross' interest in the farm, in August, 1826; and after the expiration of fifteen months, received a conveyance from the sheriff, dated the 25th of December, 1827. In June, 1828, the complainant applied to two of the personal representatives of Olmstead, one of whom was his widow, and offered to pay them the amount which was paid by the decedent to Vanderpoel, with interest thereon, after deducting the rent of the farm received by the administrators; upon their assigning to him the decree, and delivering possession of the farm, or transferring to him the lease if the farm was then rented out. And the complainant offered to pay a larger sum, if they would furnish a statement and satisfy him that any thing more was justly due. But they declined doing any thing about it. The complainant thereupon filed his original bill, in this cause, against the widow and other personal representatives of the decedent Olmstead; alleging, among other things, that the deed from Fross to Olmstead was given for the purpose of defrauding the complainant of his debt, but upon a secret understanding between Fross and Olmstead that it should be held only as a security for the money advanced for the benefit of Fross. A supplemental bill was afterwards filed, making the heirs at law parties to the suit.

C. *Bushnell*, for the complainant.

E. *Williams*, for the defendants.

THE CHANCELLOR. It is now well settled, that parol evidence is admissible to show that a deed, absolute in its terms, was intended by the parties as a mortgage, or security for the payment of money merely. And in this case, although the uncorroborated evidence of Fross, impeached as it is, would not be sufficient, of itself, to sustain the complainant's allegation that this deed was only intended by the parties to operate as a mortgage, it is shown, from Olmstead's own admissions to Hoffman and Vanderpoel, that it was taken merely as a security for the amount paid to Vanderpoel, and for other

sums which were then justly due from Fross to Olmstead. If the testimony of Fross is to be credited entirely, the deed was only intended to secure the amount paid to Vanderpoel; leaving Olmstead without any security for the seventy dollars due to him on the notes, which Fross admits he then held against him. In the first place, it is highly improbable that Olmstead would receive the deed as a security merely for the money advanced for Fross on the mortgage, when there was a still further sum previously due to himself. It is inconsistent, also, with the declarations of Olmstead to Vanderpoel and to Hoffman that it was taken to secure a previous indebtedness, as well as the amount which was due on Vanderpoel's judgment and decree. And in the letter of Olmstead, of the 9th of April, 1823, inquiring of Vanderpoel as to the amount due on the mortgage and the terms of payment which will be required, he says he shall be under the necessity of raising that mortgage to secure a demand due to himself. I think there is a sufficient allegation in the bill that the deed was given with a view to defraud the complainant. And if that fact had been established by the proofs, the deed would be set aside as fraudulent, absolutely and unconditionally; leaving the representatives of Olmstead to their lien upon the land by virtue of the assignment from Vanderpoel. But even Fross does not venture to swear that he and Olmstead had any such fraudulent object in view when the deed was given, although he leaves it to be inferred from other facts which are stated in his deposition. If the parties to the deed intended to commit such a fraud, Olmstead must have been a very stupid rogue to make the statement which he did to Judge Vanderpoel and to Hoffman a few days after the giving of this deed. On the whole, I am not satisfied, from this evidence, that any fraud was intended on the part of Olmstead; but have arrived at the conclusion that the deed was taken by him in good faith, to secure the repayment of the sum advanced on the mortgage, and the balance previously due to himself, which balance he told Judge Vanderpoel was less than $100. I must therefore declare and decree that this deed, though absolute on its face, is only valid as a mortgage for the security of the sum of $587,74, paid to

1834.

Van Buren
v.
Olmstead.

Vanderpoel, with interest from the time of such payment, on the 25th of April, 1823, and such sum as was justly due from Fross to Olmstead at the date of the deed, with interest thereon. That the complainant is entitled to redeem, upon payment of the said two sums, with interest, after deducting therefrom the rents and profits received by the defendants, or any of them, subsequent to the time that Fross occupied the farm. That it be referred to a master residing in the county of Columbia to take and state an account of what is due, upon the principles above stated. That the master charge, as an offset against the amount due to the defendants for principal and interest on the said security by way of mortgage, the amount of rents and profits of the premises since 1826, and including the amount received from the tenant for that year. That in estimating the rents and profits, if the premises have not been rented out at a fair cash rent, the master charge a fair cash rent therefor; such as might have been received, with reasonable care and prudence, over and above the taxes and repairs, as, from the present situation of the premises, such repairs shall appear to have been made. The master is also to allow interest as shall be just. And upon the coming in and confirmation of the master's report, the complainant is to pay to the personal representatives of Olmstead the amount reported due, with interest from the date of the report, within three months after the confirmation of the report. Upon the payment thereof, the complainant is to be let into possession of the premises; and the widow, and the heirs at law who are adults, must execute to the complainant a release of all their interest in the premises, with covenants against their own acts, upon the request and at the expense of the complainant. And the infant defendants, respectively, as they arrive at age, are to execute similar releases.

The situation in which this property was left at the death of Olmstead rendered it impossible for the personal represntatives to give to the complainant his equitable rights, without the aid of this court; as the legal title to the land was prima facie in the infant heirs. The offer to pay, under such circumstances, was not sufficient to deprive the defendants of

interest on their debt, to be off-set against the rents and profits with which they are chargeable.    Neither do I think they should, under the circumstances of this case, be charged with the complainant's costs.    The general rule is, that a complainant seeking to redeem does not recover costs, but pays costs to the other party, although he obtains a decree in his favor allowing him to redeem.    But, in this case, the complainant has done every thing he could to save the expense of this litigation ; the whole of which has probably been produced by the irregular and improper mode adopted by the decedent, in taking an absolute deed for the security of his debt, instead of adopting the ordinary mode of security, which upon its face would have showed the transaction as it really was. I do not think it would be just and equitable to charge the creditor coming to redeem with the costs of this defence. The complainant must, therefore, bear his own costs; and the costs of the defendants must be paid by the personal representatives, out of the fund to be received by them under this decree.