1836.

EAGLE
INSURANCE
COMPANY
v.
PELL.

</div>

The Eagle Fire Insurance Company v. Pell, et al.

---

Where a mortgagor or owner of an equity of redemption refuses or neglects to pay taxes due upon the mortgaged premises, the mortgagee may pay them for his own protection and add the amount to his claim ; and if there be a deficiency upon a foreclosure and sale to meet such payment of taxes, the mortgagor is liable for the same upon his bond or covenant.

And where the mortgagor has sold the mortgaged premises subject to the mortgage and the mortgagees take a bond from the buyer for repayment of money paid by them for taxes, such bond will not, necessarily, bar the mortgagees from their remedy against the original mortgagor on account of such payment: the bond not being of a higher nature than the original bond and mortgage—it is collateral and not substitutional. If the liability of the mortgagor has been discharged, it is for him to show it.

---

The complainants had filed their bill to foreclose the equity of redemption in two mortgages, given to them by the defendant, Ferris Pell, on several parcels of property and for a sale of the same. The amount of principal and interest reported due was thirty-two thousand two hundred and seven dollars and seventy-six cents. On the twenty-first day of January one thousand eight hundred and thirty-one, the usual decree for a sale of the mortgaged premises or so much thereof as should be sufficient to raise the amount due to the complainants for principal, interest and costs was had and out of the proceeds the master was to pay such amount into court and if there happened to be a deficiency, the master was directed to specify the amount of it in his report of sale : but the decree provided that no process of execution should be had for the payment of such deficiency

<div style="text-align:right">

October 21st,.
1835.

Mortgagor
and mort-
gagee.
Taxes.

</div>

and the defendants were to be left to their liability for the same in any suit or suits at law thereafter to be instituted on all or any of the bonds mentioned in the bill of complaint; and the complainants were authorized to institute any suit or suits at law for a deficiency.

The property was not sold under this decree until the twelfth day of February one thousand eight hundred and thirty-three; and the aggregate of sales was then thirty-seven thousand two hundred and seventy-five dollars.

In the meantime, taxes and assessments upon the mortgaged premises had become due to the corporation of the city of New York, amounting, with interest, to two thousand and eighty-six dollars, which the complainants alleged they had been compelled to pay in order to preserve their security, the property being liable to a sale by the corporation; and they had added that amount to the principal and interest of the mortgage debt and the costs, less a deficiency of one thousand nine hundred and forty-one dollars and sixty-eight cents, which, in the master's final report, was stated to be due from the mortgagor, Ferris Pell, to the complainants.

Exceptions were taken to this report by the defendant, Ferris Pell, upon the ground that he ought not to be charged with nor made personally liable on his bond for the amount of the assessments; and the grounds upon which he claimed exemption were these: that, on the first day of May one thousand eight hundred and twenty-seven, he sold and conveyed the mortgaged premises to Alfred S. Pell, subject to the incumbrances, the purchaser assuming to pay the same and entering into a covenant to indemnify and save harmless the grantor, Ferris Pell, from the payment of the bonds and mortgages and any taxes or assessments upon the lots and from any responsibility or liability by reason thereof. Also that afterwards, when the assessments and taxes became payable (some portion of which had been imposed prior to the conveyance by Ferris Pell to Alfred S. Pell and some afterwards while Alfred S. Pell was the owner) and he being unable to pay the same without aid from the complainants, they, with a view of preventing a sale by order of the corporation and of preserving the security of their mortgages unimpaired, at the request of Alfred S. Pell

agreed to advance to the amount of one thousand eight hundred dollars to be applied to the payment of the assessments —taking his bond and an additional mortgage upon the same premises for the amount, which he accordingly executed and delivered to them under seal of the twenty-fifth day of February one thousand eight hundred and thirty-one. In March following they applied the money to the payment of the assessments and thereby exonerated the premises from the charge or incumbrance. This arrangement was negociated with the complainants solely by Alfred. S. Pell. Hence it was insisted, on the part of Ferris Pell, that, at the time of the sale of the mortgaged premises, there were no assessments constituting a lien or charge to be paid out of the proceeds of sale. That the same had already been paid by means of a fresh loan made to Alfred S. Pell upon his individual bond and mortgage, and in applying the one thousand eight hundred dollars to that object, the complainants acted only as agents of Alfred S. Pell and having his bond they were bound to look to him or his estate for reimbursement and had no right to resort to him (Ferris Pell, on a deficiency, the mortgaged premises having sold for enough to satisfy the amount of indebtedness upon his bonds and mortgages and the costs.

Mr. *G. Wood,* for the complainants.

Mr. *C. F. Grim,* for the defendant, Pell.

THE VICE-CHANCELLOR :—So far as the testimony taken *April 4th.* before the master goes to explain the transaction and the object of the complainants in taking the bond and mortgage of Alfred S. Pell for the one thousand eight hundred dollars, it appears not to have been considered a loan of money made to him, but an advance from necessity, to protect their original mortgage security, they applying the money themselves to the payment of the demands upon the property by the corporation and *ex abundanti cautela* taking Alfred S. Pell's bond and mortgage in order to bind him personally for the amount, at the same time it was intended to be collateral to the original bonds and mortgages of Ferris Pell and by no means a relinquishment of any

liability he might be under to them for the amount of the assessments, but an additional security for the same; and that the complainants looked to the proceeds of the mortgaged premises, when the same should be sold, for the repayment of such advances.

It is not shown, however, that Ferris Pell was consulted or ever agreed to consider the transaction in this light. Nor do I think there is enough to warrant the inference that he so understood it, although it appears that, at his solicitation, the master's sale of the mortgaged premises under the decree was several times postponed, in order that the property might sell to the greatest advantage " as he would be personally liable for any deficiency." But his apprehension on this subject may have arisen solely from the magnitude of the debt and the costs of the proceeding without taking taxes and assessments into the account. There seems to be no doubt, however, of the fact, as to the understanding of the complainants or the officers of the company that it was not to affect their right to reimbursement out of the proceeds of the property and of their intention to hold Ferris Pell, as well as Alfred S. Pell, personally liable, upon their respective bonds, for any deficiency, after the amount of the assessments were repaid.

How then does it stand in point of law? Taxes and assessments are a charge upon the estate; and the lien thereby created takes precedence even of a prior mortgage, and, if not paid, may defeat the security of the mortgage. If, consequently, the mortgagor or owner of the equity of redemption refuses or neglects to pay, the mortgagee, for his own protection, is justified in paying the amount and may add it to his debt when he proceeds to a foreclosure and sale or when the mortgagor comes to redeem : *Faure* v. *Winans*, Hopk. C. R. 283.

In the present case, it appears that the taxes and assessments upon the mortgaged premises had become greatly in arrear; and the circumstances justified the complainants in advancing the money for the purpose of exonerating the estate from such charges. In equity, the complainants are entitled to stand in the place of the corporation and to be reimbursed the amount, with interest, out of the property

or its proceeds ; and if, by taking such amount out of the proceeds when sold, there is not enough remaining to satisfy the principal and interest of the mortgage and the costs of the proceedings, it follows that the mortgagor is liable for the deficiency upon his bond or covenant. *Prima facie* such liability exists here ; and if it has been discharged by any acts of the complainants, the defendant, Ferris Pell, should show it. The taking of the fresh bond and mortgage of Alfred S. Pell is not, *per se*, a discharge. It was not taking security of a higher nature for the same debt or demand so as to merge or extinguish the former. The superadding of Alfred S. Pell's personal liability, by virtue of the bond which he gave for the one thousand eight hundred dollars, to the liability of Ferris Pell which they already had and could resort to, if they should think proper, was rendering the one collateral to the other and not substitutional.

Neither in law, nor, according to the evidence, is Ferris Pell discharged. He is fairly chargeable personally with a deficiency ; and I do not understand the amount, which has been reported, is objected to. The complainants may resort to him or to the estate of Alfred S. Pell or to both. If Ferris Pell should be compelled to pay, he will have his remedy over against the latter upon the covenant of indemnity.

The exceptions to the master's report must be overruled, with costs.