THE PEOPLE, ex rel. J. McKnight, *vs.* BEEBE, sheriff, &c.

Upon the coming in of the return to an alternative mandamus, the relator may traverse the return, or any material part of it, by plea.  Or, he may demur to the return; and then the cause will be heard as an enumerated motion.  He may elect either to pursue that course, or to bring on the case as a non-enumerated motion, founded upon the return; unless the court specially directs formal pleadings to be interposed.

A tender of the amount due upon a judgment, if the same is not accepted, does not operate as an extinguishment of the lien.

The right of a judgment creditor to redeem premises which have been sold upon a prior execution against the property of his debtor, cannot be defeated by the act of the purchaser, in paying the judgment under which the creditor claims to redeem, without his consent;—especially where such payment is not made until after the redeeming creditor has actually paid to the sheriff the amount of the purchaser's bid, with interest, and has commenced delivering to the sheriff the papers required by the statute to be presented to, and left with, him.

A stranger to a judgment has no right to pay the same, for the purpose of extinguishing the lien thereof and preventing the holder from redeeming by virtue thereof.

A parol executory agreement for the sale of a judgment, for a sum exceeding $50, where no part of the evidences thereof are accepted, or received, by the buyer, and no part of the purchase money is paid, is within the statute of frauds.

A decree of a court of equity for the foreclosure of a mortgage, extinguishes the lien of the mortgage; although such decree is merely enrolled, and not docketed.

After a mortgage has been satisfied by a sale of the mortgaged premises under a decree of foreclosure, neither the mortgage, nor the decree, is any longer a lien upon the premises.

A creditor by mortgage never had a right to redeem premises sold under execution, either as grantee, or creditor, until it was given to him by the act of May 26, 1836.

A creditor by mortgage cannot redeem, under that act, unless his mortgage is a lien and charge upon the whole of the premises sold.  If it is a lien upon a portion of the premises, only, it is insufficient.

The People *v.* Beebe.

MOTION for a peremptory mandamus, founded upon the defendant's return to an alternative mandamus commanding him to convey to the relator certain premises sold by the defendant on execution, or show cause, &c. The return states, among other things, the following facts.

That on the 27th day of September, 1845, the defendant, as sheriff of Orleans *county, sold the* premises in question, by *virtue* of an execution against John Henderson, the former owner, in favor of Clark S. Potter, issued on a judgment recovered January 4, 1844, in a justice's court, and docketed in the clerk's office pursuant to law; that Archibald McAlister and John L. Moulthrop, formerly partners in the mercantile business, became the purchasers at the sale, for the sum of $157,46, and received a certificate of sale. The premises consisted of two separate parcels of land situate in the village of Albion in said county, the first parcel containing about half an acre of land, and the second parcel nearly one-fourth of an acre, and both particularly described by metes and bounds. On the 12th of October, 1844, the said John Henderson executed a mortgage to Clark S. Potter, Archibald McAlister and John L. Moulthrop, upon a portion of the said premises, being the second parcel, described as containing nearly one-fourth of an acre, conditioned to pay *to said Potter* $125, being the amount of a note made by Henderson to Potter, dated 11th October, 1844, payable in one year, with interest; to McAlister & Moulthrop $150, being the amount of a note made by Henderson to them, payable in one year, with interest; and to pay in one year to said Potter, and to said McAlister & Moulthrop, all sums and amounts in which he should become indebted to them on store account between that time and the end of one year. This mortgage was duly acknowledged on the 12th and recorded on the 14th of October, 1844. The return states that Potter never had any interest in this mortgage; that the note described had not been given to him by Henderson—the arrangement under which it was to have been given having been abandoned, and no account made by Henderson with him. That on the 2d of March, 1846, Moulthrop assigned all his interest in said mortgage to McAlister.

That on the 26th Dec. 1846, (the 27th being the last day of the fifteen months from the sale,) McAlister, by his attorney, left with the defendant a copy of the mortgage, duly certified by the clerk of the county, also a copy of the assignment of the mortgage by Moulthrop to McAlister, and McAlister's affidavit, dated December 26, 1846, verifying the assignment, and stating the amount due at that time to be $337,15. And he also left with the defendant the certificate of sale, and gave him notice not to permit the relator, or any other person, to redeem the premises so sold without paying the mortgage, as well as the sum bid at the sale.

That a few minutes after McAlister left the copy of the mortgage and affidavit and gave the notice, and on the same day, the relator presented to and left with the defendant, a copy of the docket of a judgment recovered by William G. Swan, administrator, and Susan Swan, administratrix of C. W. Swan deceased, against the said John Henderson, before a justice of the peace of Orleans county, on the 8th of October, 1844, for $108,20 damages and costs, a transcript of which was filed and the judgment docketed in the office of the clerk of Orleans county on the same day the judgment was rendered; which copy was duly certified by the county clerk, with a copy of the assignment of the said judgment to the relator, verified by his affidavit, and his affidavit stating the true sum then due on the judgment to be $125,98; and that the relator then paid the defendant $172, being the amount bid on said sheriff's sale, and interest at seven per cent. At the same time the relator left with the defendant a copy of a mortgage, duly certified by the clerk of said county, given by said Henderson and wife to the relator, upon the second parcel of the premises in question, bearing date March 28, 1845, to secure $300; $150 in one year from the 1st of September next after the date, and the remaining $150 in five years from date, with interest, accompanied with an affidavit of the relator stating that the sum due on the said 26th of December, 1846, upon said mortgage, over and above all payments, was $336,63.

That at the same time the relator was giving the defendant

The People *v.* Beebe.

the said papers, McAlister paid the defendant $127 in specie, and claimed to pay the Swan judgment, the execution upon which was in the defendant's hands for collection, issued on the 5th of October, 1846, returnable in ninety days, and delivered by said Swan to the defendant before the assignment of the judgment to the relator, there being no property of Henderson on which to levy; and McAlister at the same time paid the defendant his fees on the execution, which, the return states, fully satisfied the execution, and that the same has been by the defendant returned satisfied. "And the said McAlister, at the same time he paid the said execution also directed me [the defendant] to pay the said $172, left in my hands as aforesaid by said McKnight, back to him the said McKnight." Which sum, and also the said $124,98 due upon the said Swan judgment, the defendant tendered to the relator, but which he refused to accept, and both sums remain in the defendant's hands, at all times ready for the relator and subject to his order. And that on the 4th day of January, 1847, the defendant executed a conveyance of said parcels of land to said McAlister.

The return further states that McAlister foreclosed the mortgage given by Henderson to him, Potter and Moulthrop, as aforesaid, in chancery; making Henderson, Moulthrop, Potter, the relator, Wm. S. Swan, and Susan Swan, and divers other persons having liens on the said premises subsequent to the mortgage, parties to the foreclosure; all of whom were served with process, and the usual decree of foreclosure and sale was entered on the 25th of August, 1846.

That at the commencement of the foreclosure suit the complainant therein owned the Swan judgment, by assignment, and the Swans were made parties as subsequent incumbrancers, and on or about the 1st of August, 1846, and before the decree was entered, Swan obtained a reassignment of the judgment.

That the mortgaged premises (the second parcel) were advertised to be sold by a master, by virtue of the decree, on the 16th of October, 1846, at which time they were put up for sale at public auction by the master, subject to a mortgage of $200, for purchase money, and a lease to expire May 1st, 1847. That

Swan attended the sale; when the complainant's solicitor proposed to him *that if he would agree to dispose of his judgment and take no other measures about it, the solicitor would bid the premises up, for enough over and above the decree and costs, to pay the judgment, and he should have the money, when the complainant took his decree from the master.  That Swan said he would bid $136 and no more, and would agree to the proposition of the solicitor.*  That Swan bid $136, and the solicitor bid off the premises for the complainant McAlister, for a sum exceeding the amount required to be raised by the decree, which excess was sufficient to pay the Swan judgment; and the complainant subscribed the written terms of the sale, upon being informed of the agreement made between the solicitor and Swan.

The said return then proceeds as follows:  " I further certify, that the said master lives some eight or nine miles distant from the village of Albion.  That soon after the said sale the said master came to Albion, among other things, to receive the said surplus money and give McAlister a deed.  But the said John Henderson then and there pretending that he was about to raise the money to pay the said bid so that he might keep the said premises, thus kept, by such inducements, the said McAlister from taking his deed at that time, as he was intending to do.  On the said master's coming again, the said Henderson interfered, with the same pretences, and regarding his solicitations, the said McAlister postponed taking his deed at that time, and the said master not coming again, the said 26th December came; McNight availed himself of the opportunity, took an assignment of the said judgment, and sought to redeem the premises.  But of this postponement Swan was informed, and told the reasons, and he did not object to it."

The return further states, that on the 26th of December, previous to the relator's presenting his papers to the defendant, or McAlister, as alleged in the alternative writ, McAlister tendered to the relator the amount of the Swan judgment and interest, in specie, and upon the same being refused, McAlister deposited the same with the cashier of the Orleans County Bank for the

The People *v.* Beebe.

relator, and gave him notice thereof. That the said decree had been enrolled but not docketed. That on the 26th of April, 1847, McAlister took an assignment of the said certificate of sale from Moulthrop, which assignment is recorded in the county clerk's office.

*H. Stone & H. R. Selden*, for the relator.

*W. K. McAlister*, for the defendant.

WELLES, J. It was contended on the argument, by the counsel for the defendant, that the sheriff could not look beyond the papers before him, and that it was manifest to him from those papers, and the conduct and claims of the parties on the 26th of December, 1846, that McAlister had acquired by virtue of the mortgage of the 12th of October, 1844, all the right of McAlister & Moulthrop, the original purchasers at the sheriff's sale.

Without taking time to consider how the case would stand, or which of the real parties litigant would have the advantage, upon the facts thus regarded, I think all the matters contained in the return which legally affect the questions to be decided are now before the court, and should be taken into consideration. The defendant is not at liberty to controvert any of them, and it was competent for the relator to have traversed the return, or any material part of it, by plea. Or he might have demurred to the return, and then the cause would have gone upon the calendar for the general term, and been heard as an enumerated motion. He had his election between that course, and bringing on the case as a non-enumerated motion, founded upon the return, unless the court should specially direct formal pleadings to be interposed. (*The People, ex rel. Bentley,* v. *Comm'rs &c. of Hudson,* 6 *Wend.* 559. See also 16 *John.* 65.) I shall, therefore, consider the case the same as if it came up on a general demurrer to the return.

The first question is, whether the relator acquired " all the rights of the original purchaser," at the sale of the premises in

The People *v.* Beebe.

question, by the defendant, as sheriff of Orleans county. On the 26th of December, 1846, the day before the expiration of the fifteen months from the time of the sale, he paid the defendant $172, being the amount bid at the sheriff's sale with interest at seven per cent; and at the same time presented to, and left with the defendant, a copy of the docket of the Swan judgment duly certified by the clerk of the court in which it was docketed, a copy of the assignment of such judgment by the plaintiffs to the relator, verified by his affidavit, and an affidavit stating the true sum then due on the judgment to be $125,98. This was prima facie a compliance with the statute. (2 *R. S.* 373, § 60.) But it is objected that the relator had no right to redeem the premises; for the reason that the Swan judgment was extinguished by payment to the defendant, who, as sheriff, held an execution which had been issued upon it, at the very moment the relator was attempting to use it for the purpose of acquiring the rights of the original purchaser, and after the relator had paid the $172, to the defendant, as before stated. This payment was made by McAlister, who at the same time directed the defendant to pay back to the relator the $172, which he had just paid to the defendant; which sum, together with the $124,98 due upon the Swan judgment, was tendered by the defendant to the relator, and by him refused. The last sum had been tendered by McAlister to the relator, and in like manner refused before the latter paid the $172 to the defendant, or did any thing towards redeeming the premises. So far as these transactions are to be regarded in the light of a tender, they form no obstacle to the relator's acquiring the right of the purchaser at the sheriff's sale. A tender upon a judgment, if not accepted, does not operate as an extinguishment of the lien. This was held in *Jackson* v. *Law & Nelson*, (5 *Cowen*, 248,) and in *Ex parte The Peru Iron Company*, (7 *Id.* 540,) .

Nor was it, in my opinion, a *payment*, so as to operate as an extinguishment of the judgment. 1. It was too late. The relator had paid the $172 to the defendant, and while he was in the act of presenting the papers required by the statute to be

presented to, and left with the sheriff; the payment was made to the sheriff. The relator's right to be regarded as a judgment creditor, and as having in that character acquired the purchaser's interest in the premises, was so far, if not absolutely vested, as to place it beyond the power of McAlister to defeat that right, by paying his judgment, against his will. 2. I think also, the defendant had no right to accept the money of McAlister, as a payment of the Swan judgment. The relator had just before refused it, when tendered by McAlister. It was but a repetition of the effort just made by McAlister, to extinguish the lien of this judgment; and I think the relator had a right to disregard it, as interfering with his right to redeem. The defendant, so far as respected the execution upon the judgment, was the relator's agent, and was bound to follow his directions when the same were not contrary to law. If the relator was not bound to take the money from McAlister, the sheriff had no right to do it for him, without his consent. 3. McAlister had no right to pay the execution on this judgment, and thereby extinguish it. He was a stranger in respect to this judgment and execution. Laying out of view his agreement with Swan, at the master's sale, and the mortgage against Henderson of 12th of October, 1844, he had no more to do with the matter than any other stranger. He, with Moulthrop, had purchased the premises at the sheriff's sale, but that created no privity either with Henderson or the land, except that if the land should not be redeemed in fifteen months, he and Moulthrop would be entitled to a conveyance; and if it should be, then they would be entitled to their money and interest. (*Phyfe* v. *Riley*, 15 *Wend.* 248. *Clow* v. *Borst & Best*, 6 *John.* 37.) 4. It is urged, however, that the judgment in favor of Swan was provided for in the agreement made between him and McAlister at the master's sale, in pursuance of which, the latter bid for the second parcel of the premises a sum sufficient to satisfy both the decree and this judgment; and that the relator took the assignment from Swan, subject to all equities existing in relation to it. To this it is answered that the agreement was void under the statute of frauds.

The People *v.* Beebe.

The statute, (2 *R. S.* 136, § 3,) is as follows : "Every contract for the sale of any goods, chattels or things in action, for the price of fifty dollars, or more, shall be void, unless, 1. A note or memorandum of such contract be made in writing, and be subscribed by the parties to be charged thereby : or, 2. Unless the buyer shall accept and receive a part of such goods, or the evidences, or some of them, of such things in action ; or, 3. Unless the buyer shall at the time pay some part of the purchase money." In this case, the contract on the part of Swan was to "*dispose of the judgment, and take no other measures about it.*" That the agreement was directly within the statute, cannot admit of a doubt. It was a parol executory agreement for the sale of a chose, or thing in action, for over $50, no part of the evidences thereof being accepted or received by the buyer, and no part of the purchase money paid.

The defendant contends that the lien of the Swan judgment was destroyed by the decree in the foreclosure suit, in which the Swans were made parties. I do not think the decree has that effect. 1. All the defendants in the foreclosure suit, except Henderson, were made parties, as having liens *subsequent* to the mortgage, and Swan's judgment was prior to the mortgage. 2. When the suit was commenced, McAlister was the owner of this judgment, by assignment, and before the decree was entered, he reassigned it to the Swans. McAlister was not at liberty to set up, that a judgment held by him, when he filed his bill, and assigned by him afterwards, had, by operation of the decree, lost its lien. 3. The mortgage was a lien on one parcel of the premises only, and the judgment upon both. The most that can be claimed is, that the decree extinguished the lien of the judgment upon the portion of the premises embraced in the mortgage. It certainly remained a lien upon the other parcel ; and that would be sufficient to entitle him to redeem the whole. Section 53 of the statute, on this subject, is as follows : "If such judgment or decree be a lien on a specific portion only of any lot, tract or parcel so sold, the creditor having the same may acquire the title of the purchaser to the

The People *v.* Beebe.

whole of such lot, tract or parcel, in the same manner as if such lien extended to the whole." (2 *R. S.* 372.)

I believe all the objections to the relator's right to acquire the title of the purchasers at the sheriff's sale have been considered. If none of those objections were valid, the defendant should have conveyed the premises to the relator ; unless some other creditor has become a purchaser from him in pursuance of the 55th section of the statute. It is claimed that McAlister has become such purchaser, and that he was a creditor of Henderson by reason of the mortgage of the 12th of October, 1844. To this there are two sufficient answers. 1. This mortgage was merged in the decree entered upon it, which decree was enrolled, but not docketed. The lien of the mortgage was thus extinguished and gone. That a judgment at law extinguishes the debt upon which it is obtained, is too plain a proposition to require argument, or authority, to prove. And I am not able to see why a decree of a court of equity should not have the same effect. Indeed it seems to me that the rule applies equally in both cases. The decree was not a lien because it was not docketed. If the purchaser at the master's sale had received a deed, he would have had an equivalent for the lien of the mortgage in a title relating back to the date of the mortgage, and founded upon it. He would however, in that case, stand in the light of a grantee of the mortgagor, and not of a creditor having a lien. I think also, the mortgage in this case, and the decree entered upon it, were neither of them a lien ; for the reason that the latter was satisfied by a sale of the mortgaged premises. This has been repeatedly held in cases of sales of land on judgments : and I see not why it should not apply to sales upon decrees. (2 *Wend. Rep.* 298. 4 *Cowen's Rep.* 136. 5 *Hill's Rep.* 229. 10 *Paige's Rep.* 254.) 2. McAlister's mortgage never was a lien upon the whole premises sold by the defendant. In case of a judgment creditor, this would make no difference, as already shown by reference to the 53d section of the act. But a creditor by mortgage never had a right to redeem, either as grantee or creditor, until it was given to him by the act of the 26th of May, 1836. (*Sess. Laws of* 1836, *ch.*

525, *p.* 793.)   By that act it is provided that a creditor by mortgage on real estate, his assignee, &c. shall have the same right to acquire the interest of the purchaser as is given to a judgment creditor, by section fifty-one of the article of the revised statutes relative to executions; and on acquiring such interest' shall be subject to all the provisions of that article in relation to the rights of other creditors as were then applicable to judgment creditors by said article.   Section 51 of the revised statutes, referred to in the act of 1836, so far as respects this question, is substantially like the 3d section of the act of 1820.   (*Sess. Laws of* 1820, *ch.* 184, *p.* 167.)   Under the last mentioned act, it was held by the supreme court in *Erwin* v *Shriver,* (19 *John. Rep.* 379,) and in *Huntington* v. *Forkson,* (6 *Hill's Rep.* 149,) that the lien of the redeeming creditor must extend to the whole of the premises sought to be redeemed.   If a mortgage creditor seeks to redeem under the act of 1836, his mortgage must be " *a lien and charge upon the premises sold,*" in order to " *have the same right to acquire the interest of the purchaser,*" &c. as is given by the above 51st section, to bring himself within it, and secure the right which it confers.   In my opinion that is not done by having a mortgage which is a lien and charge upon a portion of the premises sold ; and the act of 1836 does not apply to the cases provided for in the 53d section above referred to.

These views render it unnecessary for me to notice the various other positions taken by the respective counsel upon the argument.

It follows that the relator was entitled to a conveyance from the defendant for the premises sold by him, and that the one given to McAlister was irregular and void.

An order must therefore be entered directing the same to be set aside and cancelled; and that a peremptory mandamus issue directed to the defendant, requiring him to convey the premises in question to the relator; and that the defendant pay the relator's costs, to be taxed.