NEW-YORK PRACTICE REPORTS. **431**

Beekman Fire Insurance Co. agt. First Methodist Episcopal Church, &c.

<hr />

## SUPREME COURT.

The Beekman Fire Insurance Company agt. The First Methodist Episcopal Church in the City of New-York, impleaded, &c.

An *insurance company* incorporated under the general act for the formation of insurance companies, and by the act allowed to invest money on bond and mortgage, have a right on the purchase of a bond and mortgage, and taking from the assignors an absolute assignment thereof, to include in the purchase and to be paid a claim or debt, for a liquidated sum due from the mortgagors to the assignors, under a special agreement between them, on it appearing on the distribution of surplus moneys realized on the sale of the mortgaged premises, that such debt or claim was absolutely due to the assignors, and intended to be secured by the mortgaged premises.

Where the first Methodist Episcopal church in John street, New-York, repre-

Beekman Fire Insurance Co. agt. First Methodist Episcopal Church, &c.

sented by Richard Keeping, president of the board of trustees, and Barton Wood, one of the trustees, and who had been appointed a committee for the purpose, by a resolution of the board of trustees of the first part, entered into an agreement, as the church or corporation, with Benjamin W. Benson and Wright Gillies, " on behalf of and representing the board of trustees of said church, of the up town party of said church," of the second part, whereby the church as the corporation, agreed to pay "to the party of the second part, the sum of $3,500, for the expenses of the said up town board, said payment to be made to said Benson;"

And by a separate article of said agreement, it was agreed that "for the information of the down town board, said up town board shall render a true and just account of the property in their hands, and which has come to their hands since the separation, and also of all sums paid by them for property, or on account of said church in John street;"

And by another separate article, that the party of the second part should transfer and deliver to the party of the first part, " all the property, goods, chattels and real estate, which they have at any time acquired by reason of their connection with said church, and while acting or professing to act for said church," &c.

*Held*, that the agreement to pay the $3,500, and the agreement to render the accounts, were independent, and not dependent the one upon the other. Also, that the agreement to transfer and deliver the property, was not a condition precedent to the right to the $3,500.

*Held also*, that the $3,500 was payable absolutely, forthwith, or at least on demand, to Benson and Gillies individually, as the legal owners and holders of the claim, and they had a right in law or equity individually, to assign such claim to the plaintiffs.

*New - York Special Term, October*, 1859.

MOTION to confirm report of referee, in a case of mortgage foreclosure.

E. L. FANCHER, *for motion.*
P. Y. CUTLER, *opposed.*

SUTHERLAND, Justice.  The assignment of the bond and mortgage to the plaintiffs, was on its face an absolute assignment, without reservation, condition or trust.

Under such assignment, and as the absolute, unconditional owner and holder of the mortgage, the plaintiffs commenced this action of foreclosure, and by the decree, the whole amount remaining due and unpaid on the mortgage, was to be

paid to the plaintiffs out of the proceeds of the sale of the mortgaged premises ; the defendant, the First Methodist Episcopal Church, making no defence and putting in no answer.

The proceeds of the sale of the mortgaged premises were more than sufficient to pay the mortgage and the costs of the action.

After decree and sale, the defendant, the church, applies to the court for affirmative relief, setting up, that the assignment to the plaintiffs, was not in fact or in equity absolute, but that the mortgage was assigned to the plaintiffs as security for moneys paid and advanced, and to be paid and advanced by the plaintiffs, to and for the said church ; and that the whole amount which had been so paid and advanced by the plaintiffs, was much less than the amount remaining unpaid on the mortgage for which the plaintiffs had got the decree.

This being admitted by the plaintiffs, and the parties conceding that the plaintiffs had so paid and advanced at different times and in various sums to the amount of $8,603.66, prior to May 28th, 1857, and the further sum of $1,236.66, on the 11th of May, 1858, these amounts with interest were ordered by the court to be paid to the plaintiffs, out of the moneys arising from the sale, and the plaintiffs claiming the right to retain, and to be paid out of such moneys the further sum of $3,500, with interest, as a debt justly due and owing from the church, to plaintiffs as assignees of Benjamin W. Benson and Wright Gillies, which right and debt was disputed by the church ; the court ordered a reference to ascertain as between the plaintiffs and the church, to whom the residue of such moneys belonged and ought to be paid.

After paying the plaintiffs the sums so conceded to have been advanced, with interest, the residue of the money directed to be paid to the plaintiffs by the decree, was about $3,800.

The referee reports that the sum of $3,500 belongs to the plaintiffs, with interest from the 19th of January, 1858, and that the plaintiffs are entitled to be paid that amount out of the residue of moneys remaining in the referee's hands. To this report and conclusion of the referee, the church excepts.

Beekman Fire Insurance Co. agt. First Methodist Episcopal Church, &c.

If the $3,500 with interest, is a debt justly due and owing from the church to the plaintiffs, I am of the opinion that the referee was right in his conclusion, and that his report should be confirmed.

He who asks for equity must do equity ; and there being no contesting creditors, surely if the church owes the plaintiffs the $3,500 with interest, it would be equitable for them to pay it.    What can be more just and equitable than to pay a debt ? And why should the court order the $3,500 to be paid over to the church, if the church ought immediately to pay it back again ?

The question then is, is the $3,500 with interest, a debt justly due and owing from the church to the plaintiffs ?

On the part of the church it is insisted that it is not :

1st.  Because it was not at and prior to the time of the alleged assignment to the plaintiffs, absolutely owing and payable by the church to any person or persons.

2d.  If absolutely payable and owing by the church, and thus a debt, that it was not owned and held by Benson and Gillies, the assignors, at the time of their alleged assignment of it to the plaintiffs, and therefore did not pass to the plaintiffs under the assignment.

3d.  If a debt absolutely payable and owing to Benson and Gillies, that the plaintiffs were not authorized by their charter to purchase the debt, and could not accept the assignment, and cannot enforce the claim.

I think at the time of the assignment to the plaintiffs, the $3,500 was absolutely owing and payable by the church to Benson and Gillies individually, and that the right of action was in them alone as individuals, and not in the " board of trustees of said church of the up town party of said church."

By the agreement of the 19th of January, 1858, between the church as the corporation, of the first part, and Benson and Gillies, " on behalf of and representing the board of trustees of said church, of the up town party of said church," of the second part, the church, as the corporation, agreed to pay " to the party of the second part, the sum of $3,500 *for the expenses of*

*the said up town board,* said payment to be made to said Benson." By a distinct and separate article of said agreement, it was agreed, that "*for the information of the down town board,* said up town board shall render a true and just account of the property in their hands, and which has come to their hands since the separation, and also of all sums paid by them for property, or on account of said church in John street;" and by another distinct and separate article of said agreement it was agreed, that the party of the second part should transfer and deliver to the party of the first part, "all the property, goods, chattels and real estate, which they have at any time acquired by reason of their connection with said church, and while acting or professing to act for said church," &c.

By recitals contained in said agreement, it appears that a dispute had theretofore existed in the First Methodist Episcopal church of the city of New-York, which had been productive of serious and protracted litigation, and that several suits were then pending between parties known as the down town and up town parties, or by persons claiming to represent said parties; and that the agreement was entered into with a view to settle such suits and difficulties, and put a final end to all controversy.

Now, whether the $3,500 payable by this agreement by the church to "the party of the second part," and the claim for which was assigned by Benson and Gillies to the plaintiffs, was absolutely owing and payable by the church, at the time of the assignment to the plaintiffs, depends upon the construction of this agreement.

The counsel for the church contends, that the agreement to pay the $3,500, and the agreement to render the account, and to transfer and deliver the property, are dependent upon each other; and that the $3,500 was not payable, and no action could be brought to recover the same, until the property was transferred and delivered, and the account rendered.

I think the proofs taken by the referee show that the property was transferred and delivered by Benson and Gillies, or the up town party, substantially in pursuance of the agreement,

prior to the assignment to the plaintiffs; but it appears that the account never has been rendered; and upon the point whether Benson and Gillies, or the up town party, had ever offered to render it, or the church, or the trustees of the church, had ever demanded it, the testimony is very contradictory.

I am of the opinion, however, that the agreement to pay the $3,500, and to render the account, are independent, and not dependent the one upon the other. I am inclined to think also, that even the transfer and delivery of the property was not a condition precedent to the right to the $3,500. By the agreement, the $3,500 was to be paid "*for the expenses of the up town board*," not for the property or the delivery of the property, or for the account or the rendering the account, and the account was to be rendered "*for the information of the down town board*," and not for the $3,500.

I think the $3,500 was payable absolutely forthwith, or at least on demand, and, even if a transfer and delivery of the property, or an offer to do so, was necessary before there was a right to make the demand, that the proofs establish that the property was transferred and delivered in pursuance of the agreement.

The $3,500, then, was owing and payable absolutely at the time of the assignment. To whom? Who had a right to assign the claim to the plaintiffs? Benson and Gillies individually, or the up town party, or the board of trustees of the up town party, of which Benson and Gillies were two?

I think Benson and Gillies were the legal owners and holders of the claim, and had a right individually to assign to the plaintiffs.

The agreement of the 19th of January must be considered as entered into between the church as a corporation, and them individually. The church, represented by Richard Keeping, president of the board of trustees, and Barton Wood, one of the trustees, and who had been appointed a committee for the purpose by a resolution of the board of trustees, entered into the agreement, as the church or the corporation. Benson and Gillies, by entering into the agreement for, or as represenitng

the up town party, acknowledged the down town party, or the board of trustees of the down town party, to be the church corporation, or to represent the church corporation. Both of the antagonistic divisions could not be, or represent the church or corporation, each to the exclusion of the other. It follows that the statement of the representative character or. capacity in which Benson and Gillies entered into the agreement, must be considered as mere words of description of them as individuals, and as the contracting parties of the second part, and not as showing that they contracted as the agents of the up town party, or of the board of trustees of the up town party, who, not being incorporated as a *party*, or as the board of trustees of a party, were capable of neither suing, or being sued, or contracting.

The debt then was owing and payable to Benson and Gillies, and was assignable not only in equity but at law.

The only remaining question is, could the plaintiffs purchase this claim and take an assignment of it?

They are incorporated under the general act for the formation of insurance companies. By the act they are allowed to invest on bond and mortgage. I am of the opinion that, under the circumstances of this case, the plaintiffs having an absolute assignment of the whole mortgage, the purchase of the claim by them must be considered as an investment on bond and mortgage.

They bought the claim and took the assignment, supposing that the payment of it was secured by the mortgage assigned to them by the church. With reference to the parol trust under which the mortgage was assigned, I think their payment of the claim to Benson and Gillies, and taking an assignment of it, ought to be considered as a further advance made to the church on the security of the mortgage. It is true, the plaintiffs could not make the church their debtor by simply paying the debt to Benson and Gillies without the consent or knowledge of the church, but the plaintiffs bought the claim and took an assignment of it, and the assignment made the church the debtor of the plaintiffs.

My conclusion is, that the report of the referee must be confirmed.

The question of costs is reserved until the entry of the order.