EDWARD SAUTTER, Appellant, *v.* BELLE FRICK and Others, as Administratrices, etc., of CHARLES F. LANE, Deceased, Respondents.

Fourth Department, April 30, 1930.

*Charles P. Williams*, for the appellant.

*Walter W. Wilcox* [*William U. Kreutzer* of counsel], for the respondents.

SEARS, P. J. In 1912 Charles F. Lane was the owner of a farm situate in Wayne county which was incumbered by six mortgages of which the plaintiff was then the owner of the fourth and fifth. On October seventh of that year Lane gave to the plaintiff a seventh mortgage on the farm to secure a bond for $2,000. The consideration for this last bond and mortgage was $1,850 previously

owing from Lane to the plaintiff, and $150 advanced later by the plaintiff to Lane. The circumstances under which this seventh mortgage was given are described in the evidence by a disinterested witness thus: " Mr. Lane came in the kitchen and Mr. Sautter said he had a shoe bill to pay. Mr. Lane had a shoe bill there and also some notes at the bank that Lane owed Sautter, and they had a shoe bill, and they wanted Charlie [Lane] to pay all this, bunch them together, which amounted to all as far as I could understand at that time, to $1,850, so he said he would like to have him give him a mortgage for $2,000 and there was four or five creditors that were pressing for the money and someone had started to sue him and others were going to sue him, and before they got judgment he said ' give me this mortgage so that I will be ahead of those other creditors and then I won't trouble any more about this mortgage.' * * * He seemed to be wrapped up in what Mr. Sautter wanted so he consented to give him the mortgage, so the mortgage was all drawn ready for signature and was signed right there * * *."

In 1914 plaintiff foreclosed the fifth mortgage. Judgment of foreclosure and sale with provision for deficiency judgment against Lane was entered in the Wayne county clerk's office on August 10, 1914. The complaint in that action made no reference to plaintiff's other mortgages which were the fourth mortgage which was senior to the one foreclosed, and the seventh mortgage which was junior. Upon the sale the plaintiff purchased the property subject to prior mortgages including the fourth mortgage which he himself owned, for a sum which, after satisfying the fifth, which was foreclosed, produced a surplus of $2,346.35. This sum was subsequently paid over to the owner of the sixth mortgage and applied thereon. There was no surplus available for payment upon the seventh mortgage.

In 1927 Lane died and letters of administration were issued to the defendants. In 1928 plaintiff brought this action to recover from the administrators of Lane's estate the amount of the bond given with the seventh mortgage.

The defendants urge, *first*, that there was a merger of the seventh mortgage with the title; *second*, that the plaintiff is estopped to maintain this action, and, *third*, that a recovery on the bond would be inequitable.

A mortgage in this State is fully recognized to be a lien merely. The foreclosure of the mortgage is the legal process for realizing upon the lien. When, under a foreclosure judgment, the property is sold, the sum paid by the purchaser takes the place of the land, the mortgage indebtedness is first paid therefrom and all subse-

quent liens owned by parties to the foreclosure are transferred from the land to that sum. (*People ex rel. McKnight* v. *Beebe,* 1 Barb. 379; *Frank* v. *Davis,* 135 N. Y. 275; *Nutt* v. *Cuming,* 155 id. 309.) Distribution follows in satisfaction of the liens in their order as far as the purchase money will satisfy them. If it will not satisfy the mortgage debt on which the foreclosure is based, a deficiency judgment as to the unsatisfied balance, if asked for, results. This being the machinery, the title acquired by the purchaser from the time of the receipt by him of the conveyance is free from the lien of the mortgage upon which the suit was based, and of subsequent liens held by parties to the action. (Code Civ. Proc. § 1632; Civ. Prac. Act, § 1085, as since amd. by Laws of 1927, chap. 683; *Rector, etc., Christ P. E. Church* v. *Mack,* 93 N. Y. 488.) Under the terms of the statute (Civ. Prac. Act, § 1085) the junior mortgages and liens of the plaintiff are treated as are the junior mortgages and liens belonging to a defendant. (*Field* v. *Hawxhurst,* 9 How. Pr. 75; *Beekman Fire Ins. Co.* v. *First M. E. Church,* 29 Barb. 658; *Mayer* v. *Moore,* 29 Misc. 475.) No merger of subsequent mortgages or of subsequent liens can, therefore, arise through the purchase of the premises at foreclosure sale by junior mortgagee or lienor. As the foreclosure of a senior mortgage by one holding a junior mortgage without mention of the junior mortgage in the complaint is not a waiver, cancellation or merger of the junior lien, but merely results in transferring the lien to the surplus money, if any, *a fortiori,* the debt secured by the junior mortgage or lien is not affected by the foreclosure. (*Blackwood* v. *Sakwinski,* 221 Mich. 464; *Isman* v. *Sinnott,* 12 Sask. L. R. 445.)

Certain old cases, such as *Tower* v. *White* (10 Paige, 395); *Roosevelt* v. *Ellithorp* (Id. 415) and *Wheeler* v. *Van Kuren* (1 Barb. Ch. 490), are to the effect that, at the time they were decided, the plaintiff was compelled to set up all his claims in his complaint and that a failure to set them up resulted at least in a waiver of the security, no lien of the plaintiff being transferred in such case to the surplus moneys after the satisfaction of the mortgage set out in the foreclosure complaint. An explanation of these rulings is found in the form of the Chancery Rules as they existed at that time. This is pointed out in the following language taken from *Field* v. *Hawxhurst* (*supra*): " Prior to 1830, it was the practice to ascertain the amount of all incumbrances upon mortgaged premises, before making a decree for sale. *Renwick* agt. *Macomb* (Hopk. 277). The 136th rule, adopted in 1830, dispensed with the necessity of ascertaining, beforehand, the liens of the defend-

ants. If any surplus moneys remained ' after satisfying the amount due the complainant, *any defendant* might have an order of reference, &c.' Still it was necessary that the complainant should set out in his bill all his claims upon the mortgaged premises. *Tower* agt. *White* (10 Paige, 395). But in 1844, the year after the decision in *Tower* agt. *White*, the 136th rule was amended so as to allow ' *any party to the suit,*' or any person not a party, who had a lien on the mortgaged premises at the time of the sale, to have an order of reference, to ascertain the priorities of the liens. The 48th rule of the court, now in force, contains the same provision. The very object of the alteration made in 1844, and which has continued unchanged until the present time was, to save the complainant from the necessity of establishing beforehand all the claims he might have upon the mortgaged premises. As I understand the rule, it was intended that the complainant should have the same right to present and establish a claim to the surplus moneys as a defendant in the foreclosure suit, or any other person. I regard it, too, as the more convenient practice." Similar language to that contained in rule 48 of the Rules of the Supreme Court or the General Rules of Practice, adopted in 1852 and in force in 1853, referred to in the above quotation, has been preserved in the statutes and rules regulating surplus money proceedings up to the present time. (Rules Civ. Prac. rule 262.)

The other claims of the defendants, as to estoppel and lack of equity, depend upon the statement of the plaintiff at the time the mortgage was given in 1914, particularly upon the phrase, " give me this mortgage so that I will be ahead of those other creditors and then I won't trouble any more about this mortgage." The meaning of this sentence may be doubtful, but if it was intended to imply an agreement not to enforce the security, it is, of course, void as contrary to the terms of the writing. (*Jamestown Business College Assn.* v. *Allen,* 172 N. Y. 291.) It is urged, however, that this, taken in connection with the long delay in bringing an action upon the bond shows such an intention not to enforce the bond as to make it inequitable for the plaintiff to maintain the action at this time. All we can say as to this is that we find no evidence of a gift, no statement relied upon by Lane to his detriment, nothing, in short, to prevent the plaintiff from enforcing his legal right within the period limited by the twenty-year Statute of Limitations.

The judgment should be reversed on the law and facts, and judgment ordered for the plaintiff for the sum of $2,000, with interest from the 7th day of October, 1912, without costs.

Finding of fact No. 11, and conclusions of law Nos. 1, 2 and 3, disapproved and reversed; and findings of fact contained in plain-

tiff's requests Nos. 8, 9, 10, 23, 24, 25 and 30, and conclusions of law contained in plaintiff's requests Nos. 2 and 3 found.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment reversed on the law and facts and judgment directed for the plaintiff for $2,000, with interest from October 7, 1912, without costs of this appeal or of the trial to either party. Certain findings of fact and conclusions of law reversed and new findings and conclusions made.